IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






No. AP-76,132






Ex Parte JOSE GARCIA BRISENO, Applicant






ON APPLICATION FOR WRIT OF HABEAS CORPUS


IN CAUSE NO. 1929-CRA-28-D1


FROM THE 49TH JUDICIAL DISTRICT COURT


WEBB COUNTY



 



 Holcomb, J., delivered the opinion of the Court, in which Keller, P.J., and
Price, Womack, Johnson, Keasler, Hervey, and Cochran, JJ., joined. 
Meyers, J., dissented.



 We filed and set Jose Garcia Briseno's post-conviction application for writ of habeas corpus
in order to determine: (1) whether that application was procedurally barred and, if not, (2) whether
the jury instructions at Briseno's capital murder trial violated the Eighth Amendment. We answer
the first question in the negative and the second question in the affirmative, and we remand the case
for a new punishment hearing.

Background


 On June 26, 1989, the United States Supreme Court handed down its opinion in Penry v.
Lynaugh, 492 U.S. 302 (1989). In that case, the Supreme Court addressed the validity, under the
Eighth Amendment, of the Texas statutory special issues submitted to the jury at the punishment
stage of Johnny Paul Penry's capital murder trial. The Court held that neither the "deliberateness"
nor "future-dangerousness" special issues was broad enough to provide an adequate vehicle for
Penry's jury to give full mitigating effect to his evidence of mental retardation and childhood abuse.

 On January 30, 1991, a Dimmit County grand jury returned an indictment charging Briseno
with the capital murder of Dimmit County Sheriff Ben Murray. (1) On April 11, 1991, Briseno filed
a written motion to set aside the indictment. In that motion, Briseno, citing Penry v. Lynaugh, 492
U.S. 302, argued that the deliberateness and future-dangerousness special issues would "not permit
the jury to consider and give effect to all the mitigating circumstances which exist[ed] concerning
[him]." On that same date, Briseno, in a separate written motion, asked the trial court to instruct the
jurors that they could nullify their affirmative answers, if any, to the special issues if they had "a
reasonable doubt, based on mitigating evidence, as to whether death [was] the appropriate
punishment." On April 19, 1991, the trial court denied Briseno's motions.

 On June 18, 1992, the State brought Briseno to trial. During the guilt stage of that trial, the
jury received evidence, in the form of Briseno's prison records from a prior incarceration, stating that
he had an IQ of 67, i.e., that he had a significantly sub-average level of intelligence. (2) Notably, there
was no evidence presented that Briseno was actually mentally retarded. At the conclusion of the
guilt stage of trial, the jury found Briseno guilty as charged in the indictment.

 At the punishment stage of trial, the trial court, in an apparent attempt to meet the
requirements of the Eighth Amendment as interpreted in Penry, specially instructed the jurors as
follows:

 "You are instructed that any evidence which, in your opinion, mitigates against the
imposition of the Death Penalty, including any aspect of the defendant's reputation,
character, or record, or any of the circumstances of the commission of the offense
which have been admitted in evidence before you, may be sufficient to cause you to
have a reasonable doubt as to whether or not the true answer to any of the special
issues is 'yes'; and in the event such evidence does so cause you to have such a
reasonable doubt, you should answer the issue 'no.'"


At the conclusion of the punishment stage, the jury answered both special issues in the affirmative,
and the trial court sentenced Briseno to death.

 On direct appeal, Briseno did not complain of the trial court's failure to grant his pretrial
Penry motions. (3) He did bring other complaints, however, all of which we rejected. Briseno v. State,
No. 71,489 (Tex.Crim.App.-June 29, 1994) (not designated for publication).

 On July 31, 1995, Briseno filed his initial post-conviction application for writ of habeas
corpus. We denied relief. Ex parte Briseno, No. WR-29,819-02 (Tex.Crim.App.-Nov. 27, 1996)
(not designated for publication).

 On July 10, 2002, Briseno filed his first subsequent post-conviction application for writ of
habeas corpus. We again denied relief. Ex parte Briseno, 135 S.W.3d 1 (Tex.Crim.App. 2004).

Briseno's Penry Claim


 On April 1, 2009, Briseno filed his second subsequent post-conviction application for writ
of habeas corpus. In that application, he complained, for the first time, of the trial court's failure to
grant his pretrial Penry motions, and he asked for a new punishment hearing. More specifically,
Briseno argued that "the two special issues [concerning his deliberateness and future dangerousness]
precluded the jury from giving full effect to his mitigating evidence." His argument continued:

 "This was a claim preserved at trial but not raised on direct appeal, because by the
time the opening brief was filed on direct appeal, the post-Penry decisions of this
Court, the United States Court of Appeals for the Fifth Circuit, and the Supreme
Court had so limited Penry claims that Mr. Briseno no longer had a Penry claim. 
With the Supreme Court's decision in Tennard v. Dretke, 542 U.S. 274 (2004), Mr.
Briseno's Penry claim was resurrected. This series of legal developments, between
trial and 2004, warrants the consideration of Mr. Briseno's revived Penry claim on
the merits."


 On April 8, 2009, we ordered Briseno's second subsequent post-conviction application for
writ of habeas corpus filed and set in order to determine: (1) whether the application was
procedurally barred and, if not, (2) whether the jury instructions at Briseno's capital murder trial
violated the Eighth Amendment. In his brief to this Court, Briseno reiterates the arguments that he
made in his application. The State responds that Briseno's claim is procedurally barred because he
could have raised it on direct appeal and because he could have raised it in his earlier applications
for habeas relief.


Analysis


 We turn first to the question of whether Briseno's habeas claim is procedurally barred
because he could have raised it on direct appeal. "Ordinarily, the writ of habeas corpus may not be
used to litigate matters that could have been raised . . . on direct appeal." Ex parte Boyd, 58 S.W.3d
134, 136 (Tex.Crim.App. 2001). However, an applicant's failure to raise a claim on direct appeal
may be excused if the basis of the claim was not reasonably available at the time of the direct appeal. 
Ibid. Briseno's habeas claim today is based on Tennard v. Dretke, 542 U.S. 274 (2004) (discussed
below). We have previously held that Tennard "announce[d] new law." Ex parte Hood, No. AP-75,370, ___S.W.3d___, ___ (Tex.Crim.App.- Feb. 24, 2010), slip op. at 20. Thus, the basis of
Briseno's habeas claim today was not reasonably available at the time of his direct appeal.

 We turn next to the question of whether Briseno's habeas claim is procedurally barred
because he could have raised it in an earlier application for habeas relief. Article 11.071, § 5, of the
Texas Code of Criminal Procedure provides that a subsequent post-conviction habeas application
is barred unless the claim asserted therein was factually or legally unavailable at the time the
previous habeas application was filed. As we noted earlier, Briseno's current habeas claim is based
on Tennard v. Dretke, 542 U.S. 274 (2004), and, as we also noted earlier, we held in Hood that
Tennard announced new law. We have also held that death-row inmates who relied upon Tennard
in their subsequent habeas applications were entitled to have their Penry claims addressed. See Ex
parte Hood, ___S.W.3d at___, slip op. at 20. Therefore, we must treat Briseno's Penry claim in the
same manner. "Similarly situated litigants bringing similar claims should be treated similarly." Ibid. 
 We turn next to whether Penry evidence was presented at Briseno's trial. Yes, it was. As
we noted earlier, at Briseno's trial there was evidence presented that he had significantly sub-average
intelligence. In Tennard, the Supreme Court held that such evidence is "obviously" mitigating
because it might serve as a basis for a sentence less than death. 542 U.S. at 288. Furthermore, the
Supreme Court held, such evidence had mitigating potential beyond the scope of the statutory special
issues. "The relationship between the special issues and Tennard's low IQ evidence has the same
essential features as the relationship between the special issues and Penry's mental retardation
evidence." Ibid. 

 We turn finally to the question of whether the trial court's special jury instruction, quoted
above, met the requirements of the Eighth Amendment as interpreted in Penry. No, it did not. As
we explained in Rios v. State, 846 S.W.2d 310, 317 (Tex.Crim.App. 1992), when addressing an
identical instruction, such an instruction did "not adequately inform the jury that it may assess a
punishment less than death on account of [the mitigating evidence] irrespective of what the evidence
shows as to [the defendant's] deliberateness and future dangerousness." Thus, the jury at Briseno's
trial had no vehicle with which to give full mitigating effect to his evidence of significantly sub-average intelligence.

 We grant the relief requested, and we remand the case for a new punishment hearing.


DELIVERED JUNE 9, 2010

DO NOT PUBLISH
1. On Briseno's motion, venue was changed to Webb County.
2. Certain other evidence presented at Briseno's trial was also potentially mitigating, but
given our disposition of Briseno's claim today, discussion of the other evidence is unnecessary.
3. Briseno's decision not to complain of the trial court's failure to grant his pretrial Penry
motions may have been based on our decision in Lackey v. State, 819 S.W.3d 111
(Tex.Crim.App. 1991) (op. on reh'g), which we handed down a few months after Briseno was
indicted. In Lackey, we held that the defendant's mitigating evidence of "limited intellectual . . .
capability" "was not comparable to the . . . evidence of organic brain damage and mental
retardation found in Penry" and that "special issue two [concerning the defendant's future
dangerousness] provided the jury with an appropriate vehicle for evaluating and acting upon"
such evidence. Id. at 134. Thus, our decision in Lackey signaled our belief that evidence of low
intelligence, as opposed to evidence of actual mental retardation, would not entitle a defendant to
a Penry instruction. We maintained that erroneous belief until the decision in Tennard v. Dretke,
542 U.S. 274 (2004), in which the Supreme Court held that "[t]he relationship between the
special issues [concerning the defendant's deliberateness and future dangerousness] and
Tennard's low IQ evidence has the same essential features as the relationship between the special
issues and Penry's mental retardation evidence." Id. at 288.